UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| STEVEN WINKLER, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>BURLINGTON NORTHERN SANTA )<br>FE RAILWAY COMPANY, )<br>)<br>Defendants. ) | Case No.: 12-1423 |

# ORDER AND OPINION

This matter is now before the Court on Defendant Burlington Northern Santa Fe Railway Company's ("BNSF") Motion for Partial Summary Judgment [19]. This matter has been fully briefed and parties were heard November 12, 2014. For the reasons set forth below, Defendant's Motion for Partial Summary Judgment [19] is GRANTED.

## STATEMENT OF FACTS

The facts in this case are largely undisputed. On December 6, 2009, Winkler sustained a workplace injury when he tightened a handbrake on a tank car. Winkler reported his injury and the hazardous safety conditions that contributed to his injury to BNSF. On January 12, 2010, BNSF served Winkler with a Notice of Investigation. On March 1, 2010, after an investigation, BNSF disciplined Winkler by placing him on a 30-day suspension and one-year probation. Winkler appealed his First Level-S Discipline with the Public Law Board; his appeal was subsequently denied. On April 16, 2010, Winkler filed a complaint against BNSF with OSHA alleging BNSF retaliated against him for reporting his December 6, 2009 injury.

On August 28, 2010, Winkler's train failed to stop at a red signal. Winkler was the conductor and William Young was the engineer; both were responsible for ensuring that the train stopped. On August 30, 2010, BNSF issued both Winkler and Young Notices of Investigation. The Notice of Investigation stated Winkler was not eligible for alternative handling because he had a Level S violation from the December 6, 2009 incident. After an investigation, BNSF terminated Winkler on September 10, 2010 because he was on probation from his First Level S-Discipline when he failed to stop at the red signal. Young, who did not have a First Level S violation, was eligible for alternative discipline and was not terminated. Winkler appealed his Second S Level violation with the Public Law Board on the grounds that BNSF did not discuss the possibility of a waiver with him or his Union Representative.

On July 27, 2011, OSHA issued an Order finding Winkler's December 6, 2009 injury was not caused by any fault of Winkler, but that the cause of Winkler's injury was BNSF's procedure of not protecting employees assigned to work on a live track. OSHA found that Winkler proved his protected activity of reporting his injury was a contributing factor in the discipline assessed against Winkler. OSHA further found that BNSF failed to demonstrate they would have taken the same adverse action in the absence of Winkler reporting his injury. OSHA ordered BNSF to cease and desist automatic issuance of notices of investigation to employees who report work injuries without reasonable suspicion that the hearing will uncover evidence of a policy violation or misconduct. OSHA further ordered BSNF:

1. To pay Winkler $25,000 for mental pain and emotional distress due to the humiliation and loss of income from the wrongful suspension.
2. To pay Winkler $75,000 in punitive damages for its reckless disregard for the law and complete indifference.

3. To pay Winkler's attorney fees in the amount of $7,500.

4. Expunge all computerized systems of references to the disciplinary hearing involving Winkler on December 10, 2009.

5. Expunge all computerized systems of references to the 30-day suspension and one-year probation.

On February 27, 2013, the Public Law Board found that BNSF violated the Collective Bargaining Agreement when it issued a Notice of Investigation for the red light violation after Winkler requested a waiver and BNSF did not expressly state that a waiver would not be permitted. The Public Law Board ordered BNSF to reinstate Winkler and make him whole for lost wages and benefits. BNSF complied. Winkler remained terminated from BNSF from September 2010 until he was reinstated in April 2013, following the February 2013 reinstatement order from the Public Law Board.

## DISCUSSION

**I.  Legal Standard**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex Corp., 106 S. Ct. at 2553. This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. Anderson, 106 S. Ct. at 2511; Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## II.  Analysis

BNSF is moving for summary judgment on Count II of Plaintiff's complaint, which alleges BNSF retaliated against Winkler for filing an OSHA complaint when it 1) issued Winkler a Notice of Investigation in August 2010 related to his failure to stop a red signal, and 2) disciplined Winkler by terminating him in September 2010 for violating BNSF rules.

> In order to establish a FRSA claim, an employee must prove by a preponderance of the evidence that: (1) "[]he engaged in protected activity," (2) "the employer knew that he engaged in the protected activity," (3) "he suffered an unfavorable personnel action," and (4) "the protected activity was a contributing factor in the unfavorable action." Harp v. Charter Communications, Inc., 558 F.3d 722, 723 (7th Cir. 2009). However, even if the employee is able to establish these four elements, the employer may still avoid liability "if it can prove 'by clear and convincing evidence' that it 'would have taken the same unfavorable personnel action in the absence of that [protected] behavior.'" Id.

Gutierrez v. Norfolk & S. Ry., 2014 U.S. Dist. LEXIS 17393 (N.D. Ill.Feb. 12, 2014).

The parties concede Winkler filed an OSHA complaint, which is protected activity under the FRSA and BNSF was aware Winkler filed an OSHA complaint. Further, there is no dispute Winkler's September 2010 termination qualifies as an adverse

4

personnel action. The only element in dispute is whether Winker's filing of the OSHA complaint was a contributing factor in BNSF's decision to terminate him.

BNSF argues there is no evidence of any connection between Winkler's Second Level-S Discipline and the OSHA complaint he filed four months earlier, but rather the sole basis for Winkler's Second Level-S Discipline and termination was his failure to stop at a red signal in violation of BNSF's rules – an offense Winkler concedes. BNSF argues there is no evidence its decision to issue Winkler the Second Level-S Discipline was pretextual. In fact, it is undisputed that, pursuant to BNSF's rules and policies, discipline is appropriate when an employee violates the rules. Furthermore, the parties concede pursuant to BNSF's Policy for Employee Performance Accountability ("PEPA"), once BNSF issued Winkler the First Level-S Discipline, any serious rule violations he committed during the subsequent twelve months would have resulted in his dismissal.

The primary argument Winkler's makes in his response to BNSF's Motion for Summary Judgment is BNSF used the December 6, 2009 injury report discipline as an aggravating factor to increase Winkler's punishment for the August 28, 2010 red signal incident. The flaw in Winkler's argument is Count II does not allege Winkler's reporting of his workplace injury was contributing factor in his termination, but rather his complaint to OSHA was the contributing factor. Winkler made no argument and pointed to no evidence in his response to BNSF's Motion for Summary Judgment evidencing BNSF retaliated against him for filing a complaint with OSHA, but instead continued to reference Winkler's reporting of his workplace injury, which is at issue in Count I. The Court finds that any damages arising from Winkler's termination, as alleged in Count II, may be relevant as related to the retaliatory conduct alleged in Count One.

Accordingly, as all issues can now be addressed in Count I, BNSF is entitled to summary judgment on Count II.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment on Count II of Plaintiff Steven Winkler's Complaint [19] is GRANTED. This matter is set for status on December 3, 2014.

Entered this 14th day of November, 2014.

/s/ James E. Shadid
James E. Shadid
Chief United States District Judge